IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

BRYAN ANDERSON,

    Plaintiff,

v.

HELIX TECHNOLOGIES, INC.,
ZACHARY L. VENEGAS,
SCOTT OGUR,
GARVIS W. TOLER III,
STEVE JANJIC,
PAUL E. HODGES,
ANDREW SCHWEIBOLD, and
SATYAVRAT JOSHI,

    Defendants.

## COMPLAINT AND JURY DEMAND

Plaintiff Bryan Anderson ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Helix Technologies, Inc. ("Helix" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which the Company will merge with Medical Outcomes Research

Analytics, LLC ("MOR"), with both companies becoming wholly owned subsidiaries of a newly formed company, Forian Inc. ("Forian") (the "Proposed Transaction").

2. On October 19, 2020, Helix and MOR issued a joint press release announcing that they had entered into an Agreement and Plan of Merger, dated October 16, 2020 (as amended on December 30, 2020 and February 9, 2021, the "Merger Agreement"), to combine Helix and MOR. Under the terms of the Merger Agreement, Helix stockholders will receive 0.05 shares of Forian common stock for each share of Helix common stock that they own (the "Merger Consideration"). Upon completion of the Proposed Transaction, MOR members will own approximately 72% and Helix shareholders will own approximately 28% of the combined company on a fully diluted basis.

3. On February 11, 2021, Helix filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Helix stockholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning, among other things: (i) Helix's and MOR's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Management Planning Inc. ("MPI"); (iii) the background of the Proposed Transaction; and (iv) MPI's and Company insiders' potential conflicts of interest. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Helix's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Helix is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Helix common stock.

9. Defendant Helix is a Delaware corporation with its principal executive offices located at 5300 DTC Parkway, Suite 300, Greenwood Village, Colorado 80111. Helix is a provider of critical infrastructure services, helping owners and operators of licensed cannabis businesses stay competitive and compliant while mitigating risk. The Company's common stock is traded on the OTCQB under the ticker symbol "HLIX."

10. Defendant Zachary L. Venegas ("Venegas") has been Helix's Chief Executive

Officer ("CEO") and a director of the Company since its inception.

11. Defendant Scott Ogur ("Ogur") has been Helix's Chief Financial Officer since 2018 and a director of the Company since 2017.

12. Defendant Garvis W. Toler III ("Toler") has been Helix's President of Data Services since 2019 and a director of the Company since 2020.

13. Defendant Steve Janjic ("Janjic") has been a director of the Company since 2019.

14. Defendant Paul E. Hodges ("Hodges") has been Senior Advisor and a director of the Company since 2016.

15. Defendant Andrew Schweibold ("Schweibold") has been a director of the Company at all relevant times.

16. Defendant Satyavrat Joshi ("Joshi") has been a director of the Company at all relevant times.

17. Defendants identified in paragraphs 10 to 16 are collectively referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. MOR is a Delaware limited liability company with its principal executive offices located at 41 University Drive, Suite 400, Newtown, Pennsylvania 18940.  It is an innovative and evolving private company developing a Real World Evidence, Software as a Service, and Data as a Service analytics platform designed to support the information requirements of constituents across the healthcare industry.

19. Forian is a Delaware corporation formed for the purpose of effecting the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

**Company Background**

20. Formerly known as Helix TCS, Inc., Helix provides technology, compliance, and security solutions to the legal cannabis industry in the United States, Colombia, Canada, Jamaica, New Zealand, and Australia. The Company offers security solutions to cannabis businesses, including assessments and planning, security system design and implementation, asset protection, transport, and assurance of security for the state licensing process.

21. Helix's security products and services include IP CCTV systems, intrusion alarm systems, perimeter alarm systems, access control, and security consulting. Helix also provides physical security solutions, such as armed and unarmed guards, armored transport, background checks, investigations, and risk assessment, as well as armed transportation services. In addition, the Company operates Cannabase, an online community for registered legal cannabis license holders. Helix also develops and licenses seed to sale cannabis compliance software to private-sector and public-sector clients that are involved in cannabis related operations; and offers on-going training, support, and software customization services.

22. On August 17, 2020, the Company issued a press release announcing its second quarter 2020 financial results, including record revenues, positive cash flows from operations, and positive EBITDA, despite facing the Covid-19 pandemic. In the press release, the Company announced the following highlights for the second quarter and first half of 2020:

**Highlights of Q2 and H1 2020 Include:**

- Grew first half revenue to $9.3mm, a 28% increase over H1 2019
- Improved first half gross profit 39% to $4.7mm
- Increased Software Gross Profit to $3.9mm in the first half, a 38% increase from 2019
- Generated Software Adjusted EBITDA1 of $1.6mm in H1 2020, a 29% margin
- Overall Adjusted EBITDA for H1 improved over $2mm from 2019 to $259k

5

- Software revenue increased 20% from H1 2019 to $5.4mm, despite the Coronavirus outbreak and associated market headwinds
- Improved quarterly Software Gross Margin to 74%, a 17% improvement from Q2 2019
- Posted Q2 Cash Flows from Operations of $446k, a 162% improvement from Q2 2019
- $2mm cash at the end of Q2, a 300% increase from Q4 2019
- Launched Cannalytics Cultivation Platform, the first of its kind in the industry
- Exceeded 200 Cannalytics clients, more than doubling users in just one quarter
- Continued to expand the Helix ecosystem by adding new integration partners

23. The press release also quoted defendant Venegas as stating:

Those who have been following Helix Technologies know that we have always focused on the disciplined execution of our strategic plans, without fanfare or hype. We continue to deliver value to our expanding client base as their critical infrastructure partner, even as we continue to grow our organic market share and roll out new products in response to customer needs . . . . In a business and market environment that has at times ignored our constantly improving metrics and growing market share, we have stayed the course and achieved all of our 2020 goals already--setting the stage for an outstanding and exciting rest of the year. I can assure you that we are only getting started.

**The Proposed Transaction**

24. On October 19, 2020, Helix and MOR issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

DENVER and NEWTOWN, PA, Oct. 19, 2020 -- Helix Technologies, Inc. (OTCQB: HLIX) and Medical Outcomes Research Analytics, LLC (MOR Analytics) today announced they have entered into an agreement to combine, creating an innovative healthcare information, analytics and technology organization. The combination will be accomplished by both companies becoming wholly owned subsidiaries of a newly formed company, Forian Inc. Upon completion of the all-stock transaction, MOR Analytics members will own approximately 72 percent and Helix shareholders will own approximately 28 percent of the combined company on a fully diluted basis. Helix shareholders will receive .027 shares of Forian common stock for each share of Helix common stock. The Forian shares received by the Helix shareholders and MOR Analytics members in the merger are expected to be treated as a tax-free exchange for federal income tax purposes. Additionally, at the time of the combination, it is expected that Forian

6

will have in excess of $10 million in cash available. Forian will not incur any new debt to affect the combination.

"We are thrilled to add Helix's unique technology and information assets to our innovative de-identified patient health data and analytics platform. We have created the nation's only HIPAA compliant, Real World Evidence platform integrating cannabis and de-identified healthcare data designed to support SaaS based business performance analytics, product safety and efficacy surveillance solutions, and evidence-based health outcomes research. Our U.S.-based healthcare and cannabis clients can leverage data-driven insights to achieve improved patient health outcomes and business performance. We are excited to welcome the Helix platform and recognize the top-tier results produced by Zachary and his team over the last several years," said MOR Analytics Chief Executive Officer, Dan Barton.

"As Helix has grown into one of the leading global providers of software used in the cannabis industry, we have prioritized value-added solutions, innovation, and outstanding execution at every opportunity. With today's important announcement, this commitment is being taken to the next level. Joining with MOR adds a completely new and critical dimension to Helix's capabilities that will further advance the commercial success of customers using our BioTrack and Cannalytics technology suites," said Helix's CEO Zachary Venegas.

MOR Analytics was founded by WebMD alumni Adam Dublin and Max Wygod, and its early financings were led by visionary healthcare entrepreneur Marty Wygod. Over the last four decades, Marty Wygod has delivered some of the most innovative and successful publicly-traded healthcare companies (Medco, Emdeon, and WebMD, among others) addressing the needs of patients, physicians, and life science companies while utilizing technology and data to reduce the cost of healthcare for millions across the globe.

**Strategic Rationale**

MOR Analytics and Helix believe there are significant synergistic opportunities to create value by combining Helix's operating software business and proprietary data assets with MOR's proprietary data and proven experience in data architecture, technology, and analytics. Specifically, the merger will create the largest proprietary, integrated, HIPAA-compliant U.S. cannabis Real World Evidence and commercial analytics platform that will:

- Deliver evidence-based insight into the safety and efficacy of ethical pharmaceuticals and cannabis products to equip physicians, caregivers, cannabis stakeholders, and patients with credible evidence to improve patient care and health outcomes through access to observational research.
- Provide a SaaS-based platform serving multiple verticals including life sciences, government, payers, providers and cannabis dispensaries, manufacturers and cultivators with the information and intelligence to better

7

- understand their products, customers, and the dynamics of a rapidly changing marketplace to drive commercial performance across segments.
- Empower regulators to more granularly assess the safety, health, social and economic outcomes associated with all therapeutic options as the cannabis market scales and cannabinoid-based therapies are adopted as mainstream therapeutic alternatives.
- Deliver the most advanced data management, software and analytics products to power the business performance of Helix's large and growing, installed customer base.

**Management, Governance and Headquarters**

The combined company expects to maintain headquarters in Newtown, PA, with offices in Fort Lauderdale, FL and Denver, CO. Dan Barton, Chief Executive Officer of MOR Analytics, will become Chief Executive Officer of the combined organization. Max Wygod, co-founder of MOR Analytics, will become Executive Chairman of the Board. Adam Dublin, co-founder of MOR Analytics, will become Chief Strategy Officer and Director. Zachary Venegas, Executive Chairman and Chief Executive Officer of Helix, and Scott Ogur, Chief Financial Officer of Helix, will continue to lead Helix alongside MOR executives. Forian's Board of Directors will initially be comprised of a total of 11 directors, including Marty Wygod, Max Wygod, Adam Dublin, Dan Barton of MOR Analytics, Scott Ogur of Helix, and six new independent directors.

**The Proxy Statement Contains Numerous Material Misstatements or Omissions**

25.  The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Helix's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

26.  Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning, among other things: (i) Helix's and MOR's financial projections; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, MPI; (iii) the background of the Proposed Transaction; and (iv) MPI's and Company insiders' potential conflicts of interest.

*Material Omissions Concerning Helix's and MOR's Financial Projections*

27. The Proxy Statement omits material information regarding the financial projections for Helix and MOR.

28. For example, with respect to Helix management's forecasts for Helix's government and commercial segments for fiscal years 2020-2023, the Proxy Statement fails to disclose the after-tax, unlevered cash flows of each segment and the underlying line items.

29. Similarly, with respect to MOR management's forecasts for MOR's cannabis and life sciences segments for fiscal years 2020-2025, the Proxy Statement fails to disclose the after-tax, unlevered cash flows for each segment and the underlying line items.

30. The omission of this material information renders the statements in the "Unaudited Financial Forecasts of Helix and MOR" and "Opinion of Helix's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning MPI's Financial Analyses***

31. The Proxy Statement omits material information regarding MPI's financial analyses.

32. The Proxy Statement describes MPI's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of MPI's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Helix's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on MPI's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

33. With respect to MPI's *Analysis of Selected Publicly Traded Companies* for Helix, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

34. With respect to MPI's *Discounted Cash Flow Analysis* of Helix, the Proxy Statement fails to disclose: (i) the after-tax, unlevered free cash flows for the cannabis and life sciences segments utilized in the analysis; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 23% to 27% and 19% to 23%; (iii) the financial metric to which MPI applied terminal multiples to derive the terminal value and quantification thereof; and (iv) quantification of Helix's cannabis and life sciences segments' terminal values.

35. With respect to MPI's *Analysis of Selected Publicly Traded Companies* for MOR, the Proxy Statement fails to disclose: (i) the individual multiples and metrics for the companies observed in the analysis; and (ii) MOR's three-year projected revenue for its cannabis and life sciences segments.

36. With respect to MPI's *Discounted Cash Flow Analysis* of MOR, the Proxy Statement fails to disclose: (i) the after-tax, unlevered free cash flows for the government and commercial segments utilized in the analysis; (ii) quantification of the inputs and assumptions underlying the discount rates ranging from 20% to 24% and 25% to 29%; (iii) the financial metric to which MPI applied terminal multiples to derive the terminal value and quantification thereof; and (iv) quantification of MOR's cannabis and life sciences segments' terminal values.

37. The omission of this material information renders the statements in the "Opinion of Helix's Financial Advisor" and "Unaudited Financial Forecasts of Helix and MOR" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

38. The Proxy Statement fails to disclose material information relating to the background process leading to the Proposed Transaction.

39. For example, according to the Proxy Statement, MPI conducted a "limited market

check process." Proxy Statement at 51. The Proxy Statement fails, however, to disclose any details of MPI's market check. Similarly, the Proxy Statement fails to disclose whether any parties entered into nondisclosure agreements with the Company in connection with this market check and, if so, whether the nondisclosure agreements contained a "don't-ask, don't-waive" ("DADW") standstill provision that is still in effect and presently precluding any potential counterparty from submitting a topping bid for Helix.

40. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a nondisclosure agreement could make a superior proposal for the Company. If the potential acquirer's nondisclosure agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the nondisclosure agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

41. Any reasonable Helix stockholder would deem the fact that a likely topping bidder for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

42. The Proxy Statement also fails to disclose the details of MOR's previous indications of interest ("IOI") for Helix. Specifically, the Proxy Statement fails to disclose the details of the: (i) April 12, 2020 IOI the Company received from COR Analytics, Inc. ("COR"), a subsidiary of MOR; (ii) IOI executed by Helix and COR on May 7, 2020; and (iii) amendment to the IOI executed by Helix and MOR on July 31, 2020.

43. The omission of this information renders the statements in the "Background of the Transaction and Merger" section of the Proxy Statement false and/or materially misleading in

11

contravention of the Exchange Act.

*Material Omissions Concerning MPI's and Company Insiders' Potential Conflicts of Interest*

44. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by MPI.

45. The Proxy Statement sets forth:

> MPI has acted as financial advisor to the Board in connection with the Transaction and will receive a fee of $120,000 for such services. MPI's fee is not contingent upon the closing of the Transaction. Please also note that MPI has not rendered valuation services to the Company in the past.

*Id.* at 59. The Proxy Statement, however, fails to disclose the details of any past services MPI has performed for Forian, MOR, or their affiliates, including the timing and nature of such services as well as the amount of compensation received by MPI for providing such services.

46. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

47. The Proxy Statement also fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

48. The October 19, 2020 press release announcing the Proposed Transaction sets forth:

> Zachary Venegas, Executive Chairman and Chief Executive Officer of Helix, and Scott Ogur, Chief Financial Officer of Helix, will continue to lead Helix alongside MOR executives. Forian's Board of Directors will initially be comprised of a total of 11 directors, including Marty Wygod, Max Wygod, Adam Dublin, Dan Barton of MOR Analytics, Scott Ogur of Helix, and six new independent directors.

Yet, the Proxy Statement fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between MOR and Helix executive officers, including who participated in all such communications, when they occurred and their content. The Proxy Statement further fails to disclose whether any of MOR's IOIs mentioned management retention,

participation or directorship in the combined company and the terms thereof.

49. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Helix's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

50. The omission of this information renders the statements in the "Opinion of Helix's Financial Advisor" and "Background of the Transaction and Merger" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

51. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Helix will be unable to make an informed voting decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and SEC Rule 14a-9 Promulgated Thereunder

52. Plaintiff repeats and realleges each and every allegation contained above, as though fully set forth herein.

53. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading in

violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

54. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Helix and MOR's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, MPI, the background of the Proposed Transaction, and potential conflicts of interest faced by MPI and Company insiders. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

55. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

56. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

57. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

**Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

58. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

59. The Individual Defendants acted as controlling persons of Helix within the meaning

of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Helix and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.  The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the making of this document.

62.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction.  The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the directors.

63.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

64.     As set forth above, the Individual Defendants had the ability to exercise control

15

over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Helix's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against defendants as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction unless and until defendants disclose and disseminate the material information identified above to Helix stockholders;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

D.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: February 17, 2021                Respectfully submitted,

/s/ Richard A. Acocelli
Richard A. Acocelli
**WEISSLAW LLP**
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: (212) 682-3025
Facsimile: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*